**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

KAREN BECKMAN,

|  |  |
|---|---|
| Plaintiff, | Civil No. 25-3725 (JRT/JFD) |

v.

SAMARITAN BETHANY SENIOR HOME;

ROCHESTER POLICE DEPARTMENT;

DEZELL, *Rochester Police*;

RADEMACHER, *Rochester Police Detective*;

OLMSTED COUNTY DISTRICT ATTORNEY'S
OFFICE;

DEPUTY JOHN DOE; and

DEPUTY JANE DOE,

                    Defendants.

**ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS**

Karen Beckman, 14715 Kilpatrick Avenue, Midlothian, IL 60445, *pro se* Plaintiff.

Tracey Holmes Donesky, **STINSON LEONARD STREET LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Defendant Samaritan Bethany Senior Home.

Ashley Marie Ramstad and Jason M. Hiveley**, IVERSON REUVERS**, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendants Rochester Police Department, Dezell, and Rademacher.

Aaron P. Knoll and Farah N. Famouri, **GREENE ESPEL**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Defendant Olmsted County District Attorney's Office.

Plaintiff Karen Beckman brought this suit pro se after she was prosecuted for and acquitted of Fourth Degree Assault of a Vulnerable Adult following an incident at a senior living facility in Rochester, Minnesota. Beckman was discharged from her position shortly after the incident. She alleges that both her discharge and prosecution were unlawful, and that Defendants discriminated against her based on age, race, national origin, gender, and sexual orientation. Beckman asserts ten federal and state claims against Samaritan Bethany Senior Home, the Rochester Police Department, the Olmsted County Attorney's Office,[1] and employees of each entity (collectively, "Defendants"). Beckman also moves for appointment of counsel. Defendants move to dismiss Beckman's complaint.

Because the Court concludes that Beckman does not plead any federal claims upon which relief can be granted, Defendants' motions will be granted to the extent they seek dismissal of Beckman's federal claims with prejudice. The Court will decline to exercise

---

[1] Beckman's Complaint refers to this Defendant as "Olmsted County District Attorney's Office." (Compl. at 1.) But she later describes the party as "Defendant Olmsted County Attorney Mark Ostrem and Assistant John and Jane Doe," all sued "in their official capacity." (*Id.* ¶ 12.) Beckman cannot assert claims against the Olmsted County Attorney's Office itself because it is not an entity that may be sued; Beckman would have to sue Olmsted County. *Crabtree v. Roseau Cnty. Sheriff Office*, Civ. No. 22-0093, 2022 WL 1523691, at *2 (D. Minn. Mar. 17, 2022) (collecting cases that confirm that "county attorney's offices are not legal entities amenable to suit"). The Court will assume that Beckman intended to name the Olmsted County Attorney and two unnamed assistants. Counsel for these parties refers to them as the "Olmsted County Defendants" in their briefing, and the Court will do the same in this Order.

jurisdiction on the remaining state law claims and will dismiss those claims without prejudice.  The Court will dismiss Beckman's motion for appointment of counsel as moot.

## BACKGROUND

### I.     FACTS

In April 2023, Beckman, a Certified Nursing Assistant ("CNA"), was employed by a healthcare staffing agency and assigned to work at Samaritan Bethany Senior Home ("Samaritan") in Rochester, Minnesota.  (Compl. ¶¶ 5–6, 14, 17.)  Beckman's care for a resident resulted in an incident being reported to Samaritan's Vulnerable Adult Investigator who, in turn, referred the case to the Rochester Police Department.  (*Id.* ¶¶ 8, 30, 32-36.)  The Police Department conducted a criminal investigation, and Beckman was charged with Fourth Degree Assault of a Vulnerable Adult.  (*Id.* ¶¶ 36-37, 42-44.)  Olmsted County tried Beckman's case to a jury, which returned a verdict of not guilty.  (*Id.* ¶ 68.)

### II.     PROCEDURAL HISTORY

On December 9, 2023, Beckman filed a charge of discrimination against "Samaritan Bethany" with the U.S. Equal Employment Opportunity Commission (EEOC) and the Tennessee Human Rights Commission, alleging racial discrimination.  (*Id.* ¶ 4, Ex. B.)  On June 28, 2024, the EEOC dismissed Beckman's charge and issued Beckman a right-to-sue letter.  (*Id.*, Ex. C.)

On September 5, 2024, Beckman filed a Complaint in the Northern District of Illinois.  (*Id.*)  On the parties' agreement, the case was transferred to this Court in September 2025.  (*See* Docket Nos. 37–38.)  Count I of Beckman's Complaint asserts a

claim for age discrimination under the Age Discrimination in Employment Act (ADEA). (Compl. at 9.) Counts II to IV assert claims for employment discrimination and retaliation under Title VII and the Minnesota Human Rights Act. (Compl. at 10–11.) Counts V to VII assert constitutional claims under 42 U.S.C. § 1983. (*Id.* at 11–16.) No Counts IX or X are listed. (*See id.*) Count XI (malicious prosecution) and a duplicate Count VII (intentional infliction of emotional distress) assert state law claims. (*Id.* at 16–17.)

Plaintiff's Complaint does not consistently and explicitly state what claims are brought against which Defendants. However, Beckman appears to bring Counts I to IV against only Samaritan. (Pl.'s Reply to Mot. Dismiss by Def. Samaritan Bethany Senior Home at 6, March 10, 2026, Docket No. 91.) Beckman has clarified that her claims against Olmsted County Defendants are limited to Counts V, VI, VII, VIII, and XI. (Pl.'s Reply to Defs.' Mot. Dismiss (filed in Illinois) at 9, April 9, 2025, Docket No. 28; Pl.'s Reply to Olmsted County Defs.' Mem. Supp. Mot. Dismiss at 9, March 10, 2026, Docket No. 87.) The Court will assume that Beckman intended to allege Counts V to VIII (§ 1983 claims), duplicate Count VII (intentional infliction of emotional distress), and Count X (malicious prosecution) against the Rochester Police Department and its officers (collectively, "Rochester Defendants").

On December 15, 2025, all Defendants filed motions to dismiss. (*See* Docket Nos. 45, 52, and 58.) Beckman did not timely reply, but she did ultimately submit replies to

Olmsted County Defendants' Motion to Dismiss (March 10, 2026, Docket No. 87) and to

Samaritan's Motion to Dismiss (March 10, 2026, Docket No. 91).

**DISCUSSION**

**I.      STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court considers all facts alleged in the complaint as true to determine if the complaint

states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the

motion to dismiss stage, the Court may consider the allegations in the complaint as well

as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken

Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most

favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v.

Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's

factual allegations as true and construes the complaint in a light most favorable to the

plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint

"does not need detailed factual allegations" but must include more "than labels and

conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Though the Court must construe a pro se complaint liberally, it need not do a plaintiff's work for her. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("[P]ro se litigants are not excused from failing to comply with substantive and procedural law.").

## II.   ANALYSIS

Defendants move to dismiss Beckman's Complaint because it fails to state a claim on which relief can be granted. The Court will address the federal claims against each Defendant in turn and then the state law claims.

### A.   Olmsted County Defendants

Beckman's federal claims against the Olmsted County Defendants (the Olmsted County Attorney and two unnamed assistants) are against these parties in their official capacities.[2] (Compl. ¶ 12.) "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" *Hafer v. Melo*, 502 U.S. 21, 25 (1991). For the Olmsted County Defendants, the real party in interest is thus Olmsted County, the government entity.

To plead a municipal liability claim, a plaintiff must allege facts plausibly showing: (1) an official policy or decision by an official with final policymaking authority that caused

---

[2] Beckman's claims against the Olmsted County Defendants are Counts V to VIII and XI. Counts V to VIII assert § 1983 claims. Count XI and duplicate Count VII assert state law claims and will be addressed in Part D, below.

the violation; (2) a widespread and persistent custom or practice so pervasive as to have the force of law that caused the violation; or (3) a failure to train or supervise that reflects deliberate indifference to constitutional rights which caused the violation. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). A plaintiff also must plausibly allege a "direct causal link" between the relevant municipal action and the alleged constitutional injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Even if Beckman plausibly alleges a constitutional violation, she does not plead any concrete factual allegations supporting the existence of an identified policy, any widespread pattern of similar misconduct, or any municipal decision by a policymaker. For at least these reasons, Beckman's claims fail against the Olmsted County Defendants, and these claims will be dismissed with prejudice.

### B.    Rochester Defendants

Beckman's federal claims against the Rochester Defendants are brought under 42 U.S.C. § 1983.[3] The Court will first address Beckman's claims against the Rochester Police Department, then Beckman's claims against the employees of the Rochester Police Department in both their official and individual capacities. (*See* Compl. ¶¶ 10, 11, 13 (asserting claims against employees in both capacities).)

---

[3] Beckman's claims against the Rochester Defendants are Counts V to VIII and XI. Counts V to VIII assert § 1983 claims. Count XI and duplicate Count VII assert state law claims and will be addressed in Part D, below.

### 1. Rochester Police Department

Beckman names the Rochester Police Department as a Defendant in her Complaint. (Compl. at 1.) But police departments are not separate persons or "juridical entities" capable of being sued under 42 U.S.C. § 1983; they are simply arms or subdivisions of the relevant county or city. *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). Thus, Beckman's claims against the Rochester Police Department will be dismissed with prejudice.

### 2. Officers in Official Capacities

To the extent Beckman asserts claims against Rochester Police Department officers in their official capacities under § 1983, those claims against city employees amount to claims against the governmental entity itself. *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Such official capacity claims fail because those entities are not capable of being sued under 42 U.S.C. § 1983, and these claims will be dismissed with prejudice.

### 3. Officers in Individual Capacities

To the extent Beckman asserts claims against Rochester Police Department officers in their individual capacities, the Rochester Defendants argue they are entitled to qualified immunity. The Court will dismiss these claims because Beckman has not alleged facts that would establish a violation of a constitutional right.

Qualified immunity shields government officials from damages liability under 42 U.S.C. § 1983 so long as "their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable official would have known." *Good v. Olk-Long*, 71 F.3d 314, 315 (8th Cir. 1995); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts assess qualified immunity through an "objective legal reasonableness" lens "in light of the legal rules that were clearly established" at the time the official acted. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal quotation marks omitted).  In determining whether qualified immunity applies, courts consider "(1) whether the facts alleged or shown, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that [their] actions were unlawful." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

Beckman alleges that the Rochester Defendants concealed and fabricated evidence, resulting in violation of her Fourth and Fourteenth Amendment rights (Counts V to VII) and conspired to "frame" Beckman for a crime she did not commit (Count VIII).

But Beckman does not plead any facts that would establish what evidence was concealed, what statements were false or fabricated, or who was responsible for the concealment or fabrication.  Although Beckman alleges that Rochester Defendants "inventoried . . . into evidence a deceptively edited video from the incident date" (Compl. ¶ 44), Beckman does not allege who edited the video (*see id.* ¶ 40 (stating only that the "video was later deceptively edited")).  Beckman also does not allege any facts that would

support Rochester Defendants knew the video was "deceptively edited." (*See id.* ¶¶ 40-44.) She only states in a conclusory fashion that Rochester Defendants acted "with actual and constructive knowledge[.]" (*Id.* ¶ 44.)

A complaint's factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. Beckman's conclusions without facts to support them are insufficient to support her claims. *See Iqbal*, 556 U.S. at 678.

Similarly, with respect to her conspiracy claim (Count VII), Beckman again provides no factual allegations, only legal conclusions. (*See* Compl. at 15–16.) While a plaintiff asserting a civil conspiracy claim must allege "specific facts tending to show a 'meeting of the minds' among the alleged conspirators," *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010), Beckman provides no facts and certainly no specific ones.

In short, the Court cannot find that "the facts alleged or shown . . . establish a violation of a constitutional right." *McCaster*, 684 F.3d at 746. The Court will, therefore, dismiss Beckman's claims to the extent they are asserted against Rochester Police Department officers in their individual capacities.

\*    \*    \*

The Court concludes that Beckman has failed to state a plausible federal claim against the Rochester Police Department or the employees of the Rochester Police Department, in either their official or individual capacities. The Court will, therefore,

-10-

grant the Rochester Police Department's motion to dismiss to the extent it seeks dismissal with prejudice of Beckman's federal claims.

### C.    Samaritan Defendants

Beckman's federal claims against Samaritan assert claims for age discrimination under the Age Discrimination in Employment Act (ADEA) (Count I) and national origin discrimination and retaliation in violation of Title VII (Counts II and III).[4]  The Court will first address whether Beckman and Samaritan had an employer-employee relationship and then it will address Counts I through III, in turn.

### 1.    Employer-Employee Relationship

"To state a claim for employment discrimination and retaliation under Title VII . . . Plaintiffs must allege an employer/employee relationship."  *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 886 (D. Minn. 2010) (citing 42 U.S.C. § 2000e–2(a)).  Beckman states in her Complaint that she was "employed by [Eshyft] Healthcare Agency"—not Samaritan.  (Compl. ¶ 14.)  However, Beckman also states she was "employed by Samaritan Bethany Facility via [Eshyft] Healthcare Agency Contract[.]"  (*Id.* ¶ 5.)  Construing all facts in the light most favorable to Beckman—as the Court must at this stage, the Court concludes that Beckman has adequately alleged she was employed by Samaritan.

---

[4] Beckman's claims against Samaritan are Counts I through IV.  Count IV, Beckman's claim under the Minnesota Human Rights Act (MHRA), will be addressed with Beckman's other state law claims, below.

### 2.      Count I: ADEA Claim

"Both Title VII and the ADEA require that an employee complaining of discrimination follow administrative procedures before filing a lawsuit in federal court." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018).  To exhaust administrative remedies under Title VII, a plaintiff must (1) timely file a discrimination charge with the EEOC, and (2) receive a right to sue letter.  42 U.S.C. § 2000e-5(b), (c), (e).  A plaintiff is "deemed to have to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought."  *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006) (citation omitted).

With respect to Count I, Beckman did not allege age discrimination in her charge of discrimination; she only alleged discrimination on the basis of race.  (*See* Compl., Ex. B.)  Since discrimination on the basis of age was not part of her EEOC charge and could not reasonably be expected to grow out of an EEOC investigation of Beckman's allegation that she "was discriminated against because of [her] race" (*id.*), Beckman failed to exhaust her administrative remedies for this claim.

The Court will, accordingly, dismiss Beckman's claim under the ADEA (Count I) with prejudice.

### 3.      Count II: Discrimination under Title VII

With respect to Count II, Beckman alleges in her Complaint that "Defendants discriminated against [her] because of her national origin . . . by terminating her and

treating her differently than it treated similarly situated non-African American CNAs." (Compl. ¶ 51.)

First, as noted above, Beckman only alleged discrimination on the basis of race in her charge of discrimination.  However, even construing Beckman's pro se Complaint liberally—that she is making a racial discrimination (not a national origin) claim,[5] Beckman's claim cannot survive this motion to dismiss stage because Beckman did not plausibly allege discrimination under Title VII.

"Discrimination claims brought under Title VII . . . are analyzed under the *McDonnell Douglas* burden shifting framework."  *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To succeed with a racial discrimination claim, Robinson must show "either direct evidence of discrimination" or a prima facie case of discrimination.  *Robinson*, 753 F.3d at 754. Beckman does not allege any direct evidence of discrimination.  Accordingly, at the pleading phase, the "allegations in a [Beckman's Title VII] complaint must give plausible support to the . . . prima facie requirements."  *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (internal quotation marks omitted).  To establish a prima facie case of race discrimination, a plaintiff must show that "she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4)

---

[5] To the extent Beckman is making a national origin claim, she does not sufficiently allege any facts to support her allegation that she is a member of a protected class.

can provide facts that give rise to an inference of unlawful . . . race discrimination."

*Robinson*, 753 F.3d at 754.

With respect to racial discrimination, Beckman pleads that she belongs to a protected group, that she was qualified as a CNA, and that she suffered an adverse employment action, a termination. She does not, however, plausibly plead that the circumstances of her termination give rise to an inference of race discrimination. To "establish a prima facie case that she was suspended or terminated because of her race, [a plaintiff] must show that she met her employer's legitimate expectations . . . [and] that similarly situated employees committed the same conduct but were treated differently." *Id.* at 755. To the extent that Beckman is pleading that she was a Samaritan employee, she has not pled that she met Samaritan's legitimate expectations. Nor has she pled sufficient facts to support her allegation that she was treated differently than similarly situated employees.[6] Without facts supporting such an allegation, Beckman has failed to state a racial discrimination claim that is plausible on its face.

The Court will, therefore, dismiss this claim (Count II) without prejudice.

---

[6] Although Beckman does make a conclusory allegation that Samaritan "treat[ed] her differently than it treated similarly situated non-African American CNAs" (Compl. ¶ 51), she does not allege any facts to support a conclusion that a non-African American CNA was accused of the same conduct she was.

### 4.     Count III: Retaliation under Title VII

"To establish retaliation under either Title VII or § 1981, a plaintiff must prove (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action." *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023). But Beckman does not allege that she engaged in a "statutorily protected activity[.]" She alleges simply that she "follow[ed] through with her report of the incident" and "request[ed] security cam [footage] be reviewed." (Compl. ¶ 53.) In short, she did not allege conduct that "constitute[s] opposition to a discriminatory employment practice[.]" *Warren*, 79 F.4th at 974.[7] Without such an allegation, Beckman has failed to state a retaliation claim that is plausible on its face.

The Court will, therefore, dismiss this claim (Count III) without prejudice.

\*     \*     \*

Beckman has failed to state a plausible federal claim against Samaritan, and the Court will dismiss Count I with prejudice and Counts II and III without prejudice. Accordingly, the Court will grant Samaritan's motion to dismiss to the extent it seeks dismissal of these claims.

---

[7] Beckman also cannot allege that her termination was linked to the filing of her EEOC charge; the charge was filed months after her termination date.

D.   **State Law Claims**

The sole basis for the Court's jurisdiction over Beckman's state law claims (Count IV, Count XI, and duplicate Count VII) is 28 U.S.C. § 1367(a), which permits a federal district court to exercise supplemental jurisdiction over claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  The Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction."  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).

Because the Court will grant the Defendants' motions to dismiss all of Beckman's other claims, it will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and will dismiss those claims without prejudice.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) (noting federal courts may dismiss state claims without prejudice so they may be "left for resolution to state tribunals").

## CONCLUSION

The Court concludes that Beckman does not plead any federal claims upon which relief can be granted.  The Court will, therefore, grant Defendants' motions to dismiss to the extent they seek dismissal of Beckman's federal claims.[8]  The Court will decline to

---

[8] For the federal claims the Court dismisses **without prejudice**, Beckman may amend these claims and refile her Complaint.  But for an amended complaint to survive, Beckman must fix the deficiencies and defects in her claims that were noted in this Order.

exercise jurisdiction on the remaining state law claims and will dismiss those claims without prejudice.  The Court will dismiss Beckman's motion for appointment of counsel as moot.[9]

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Dezell, Rademacher, Rochester Police Department's Motion to Dismiss (Docket No. [45]), Olmsted County Defendants' Motion to Dismiss (Docket No. [52]), and Defendant Samaritan Bethany Senior Home's Motion to Dismiss (Docket No. [58]) are **GRANTED in part and DENIED in part**, as follows:

    a. Counts I and V to VII of Plaintiff's Complaint (Docket No. [1]) are **DISMISSED with prejudice**.

    b. Counts II and III (Title VII claims), Count IV (Violation of the MHRA), Count XI (State Law Malicious Prosecution), and duplicate Count VII (State Law Intentional Infliction of Emotional Distress) of Plaintiff's Complaint (Docket No. [1]) are **DISMISSED without prejudice**.

---

[9] Pro se litigants do not have a constitutional or statutory right to counsel in civil cases. *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  The Court concludes that the factual and legal issues raised by Beckman's Complaint are not so complex and numerous that the appointment of counsel would benefit either Beckman or the court; she has clearly demonstrated at least a threshold ability to articulate her claims and is capable of self-representation in this matter.

2.  Plaintiff's Motion for Appointment of Counsel (Docket No. [73]) is **DENIED as moot**.

3.  Plaintiff's Motion to Supplement Record (Docket No. [81]) is **DENIED as untimely**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 2, 2026                                          _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                                United States District Judge